NOT DESIGNATED FOR PUBLICATION

No. 126,665

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN VENTURA US,
(SUN SURETY INSURANCE COMPANY),
*Appellant*,

and

ROSE BLOMANDER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Submitted without oral argument. Opinion filed August 8, 2025. Reversed and remanded with directions.

*James C. Dodge*, of Sharp McQueen, P.A., of Liberal, for appellant.

No briefs by appellees.

*Robert E. McRorey*, of Olathe, for amicus curiae The American Bail Coalition.

Before ATCHESON, P.J., COBLE and PICKERING, JJ.

PER CURIAM: We explore the nooks and crannies of agency law and conclude that the Seward County District Court erred in holding Sun Surety Insurance Company liable on an appearance bond posted in this criminal case for Defendant Juan Ventura Us. The

1

district court conducted an evidentiary hearing on the State's request for forfeiture of the bond. Based on the district court's factual findings and a correct application of agency principles, Sun Surety was not legally responsible for the bond Rose Blomander signed through her company Big I Bail Bonding. We, therefore, reverse and remand to the district court with directions to set aside the judgment against Sun Surety.

FACTUAL AND PROCEDURAL HISTORY

The State filed this criminal case in July 2021 charging Ventura with one count of rape and two counts of aggravated indecent liberties with a child. The district court set an appearance bond of $250,000 for Ventura. In August, an officer with Seward County filed a bond sheet for Ventura with the Seward County Detention Center. The bond sheet included a document entitled "Appearance Bond" that Ventura signed as the defendant and Blomander signed as the bonding agent with Big I Bail Bonding identified as the cosigner. Ventura failed to show up for his preliminary hearing and absconded to parts unknown. The State filed a motion to forfeit the bond—precipitating the proceedings resulting in this appeal.

The district court heard testimony and received other evidence on the motion on October 6, 2022, and April 5, 2023. In a lengthy journal entry filed six weeks later, the district court held that Sun Surety, as the surety for Big I Bail Bonding and Blomander, was obligated to pay the $250,000 appearance bond upon Ventura's failure to appear. The district court also held Ventura personally liable on the bond, although that aspect of the ruling is not part of this appeal.

The hearing evidence showed that Blomander (and Big I Bail Bonding) first contracted with Sun Surety in November 2016. Pertinent here, Sun Surety prepared a document entitled "Qualifying Power of Attorney" in November 2020 advising all courts in the 26th Judicial District of Kansas that Blomander was its agent and attorney-in-fact

2

and had the authority to execute bonds up to $250,000. The document stated that an individual power of attorney had to be attached to any bond Blomander signed under its agency, creating a condition to Sun Surety's liability. And by its own terms, the Qualifying Power of Attorney automatically expired in December 2021. The bond Blomander prepared and signed for Ventura did not include an individual power of attorney from Sun Surety.

Blomander provided the Qualifying Power of Attorney to the chief judge of the judicial district, along with a copy of her driver's license, a statement that she was not prohibited under Kansas law from acting as a surety, a certificate of completion of continuing education for bail agents, and a copy of her insurance agent's license. After submitting those materials, Blomander received an email in February 2021 from an administrative assistant to the chief judge informing her that she was authorized to write bonds within the judicial district. The chief judge included Big I Bail Bonding and Blomander on a list of approved bail bond writers—1 of 12 designated companies. The entry for Big I Bail Bonding included the $250,000 cap, identified Sun Surety, and noted the authorization expired at the end of the year. The Seward County Detention Center used the list of approved bail bond companies.

Michael Wood, a vice president with Sun Surety, testified that Blomander had to contact the company and obtain authorization for any bond over $50,000 notwithstanding the $250,000 cap in the Qualifying Power of Attorney. The district court credited Wood's testimony on this point. Blomander testified that she and her business signed the bond for Ventura outside of her surety relationship with Sun Surety. She referred to the transaction as a "pocket bond," meaning she undertook the obligation individually. Ultimately, the district court declined to credit that testimony. And the district court discounted the absence of an individual power of attorney from Sun Surety for Ventura's bond. The district court appeared to do so because the State introduced four criminal cases from 2015 and one from early 2016 in which Blomander signed a defendant's bond without

3

attaching an individual power of attorney. But those cases predated the start of the business relationship between Blomander and Sun Surety.

The district court concluded that Sun Surety was obligated on the Ventura bond through express and implied agency—forms of actual agency—and through apparent agency. We discuss those legal principles in explaining why the district court erred in coming to that conclusion. Sun Surety timely appealed and has filed a brief. No other player from the district court proceedings has done so.

LEGAL ANALYSIS

Appellate review of a district court's assessment of a principal-agent relationship presents a mixed question of fact and law. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, Syl. ¶ 2, 335 P.3d 1178 (2014). As the finder of fact in the evidentiary hearing, the district court had the prerogative to resolve conflicts in the evidence. We do not step in to reweigh that evidence or to second-guess credibility determinations. But the ultimate call as to whether those facts establish an agency relationship presents a question of law we examine without deference to the district court's conclusion. *Golden Rule Ins. Co.*, 300 Kan. at 954 (quoting *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446-47, 827 P.2d 24 [1992]). The *Golden Rule* case offers a comprehensive and comparatively recent outline of agency principles. Although *Golden Rule* came to the Kansas Supreme Court through the Kansas Judicial Review Act, K.S.A. 77-601 et seq., the manner of review borrowed from *Barbara Oil*, a Chapter 60 action, and the substantive law of agency apply here.

The *Golden Rule* court pointed out that Kansas cases have historically referred to the character of the agency conferred or exercised, while other sources, such as the Third Restatement of Agency, typically describe the nature of the authority. So Kansas law commonly speaks of express and implied agency—forms of actual agency—and apparent

4

agency, as the district court did here. The Restatement refers to express and implied authority and apparent authority. See *Golden Rule Ins. Co.*, 300 Kan. at 955-58; see also Restatement (Third) of Agency § 2.01, comment b (2005). The difference is one of labelling rather than substance. *Golden Rule Ins. Co.*, 300 Kan. at 957 ("Kansas caselaw has been consistent with the general common law agency principles . . . in substance if not always in form.").

A principal is bound by and can be held liable for conduct or representations attributable to a person acting as an actual or apparent agent. *Golden Rule Ins. Co.*, 300 Kan. at 956; *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 244, 777 P.2d 811 (1989). As explained in *Golden Rule*, actual agency or authority derives from instructions a principal imparts to their agent—that is, what the agent has been instructed to do in carrying out the agency. As we have said, actual agency may be express or implied. Express agency entails what the principal has explicitly permitted the agent to do. Implied agency covers an agent's conduct that, while not explicitly authorized, is so closely allied with the express duties that the agent reasonably undertakes them in furtherance of the agency. *Golden Rule Ins. Co.*, 300 Kan. at 956.

Here, the district court misapplied the law governing actual agency to hold Sun Surety liable on Ventura's appearance bond. Wood's testimony established that Blomander (and concomitantly Big I Bail Bonding) had to obtain authorization from Sun Surety *before* writing a bond for more than $50,000. In other words, Blomander not only lacked explicit authority to sign off on the $250,000 bond for Ventura without preapproval from Sun Surety, she had been expressly forbidden to do so. And the undisputed evidence shows Sun Surety did not approve the bond. Likewise, given those constraints on her authority to act for Sun Surety, Blomander could not have reasonably concluded that signing Ventura's bond without approval was somehow in furtherance of the actual agency Sun Surety had conferred on her.

5

Apparent agency rests on a foundation different from actual agency. A party may create an apparent agency in another party by treating that party as if they were an agent, even though no such relationship actually has been established. The circumstances typically require conduct or representations consistent with how a principal would interact with their agent. If a third party reasonably relies on those circumstances in later dealings with the ostensible agent, then the ostensible principal—having cultivated that reliance through their own conduct—will be bound by the apparent agency. *Golden Rule Ins. Co.*, 300 Kan. at 956-57; *Town Center Shopping Center v. Premier Mortgage Funding, Inc.*, 37 Kan. App. 2d 1, Syl. ¶ 3, 148 P.3d 565 (2006). The ostensible principal's conduct is the linchpin to a legally binding apparent agency.

Here, the State offered no evidence that Sun Surety acted in a way that induced officials with the Seward County Detention Center to believe the company had authorized Blomander or Big I Bail Bonding to sign on Ventura's appearance bond as its agent. Neither the bond sheet nor the appearance bond for Ventura mentions Sun Surety, let alone purports to be signed or approved by a company representative. As we have said, the bond did not include an individual power of attorney from Sun Surety. Based on the evidentiary record, the detention center accepted the bond from Blomander because she and Big I Bail Bonding were on the list the chief judge's office compiled and circulated. While the list identified Sun Surety as being affiliated with Blomander and Big I Bail Bonding, the list is not a representation of Sun Surety itself and, therefore, could not form the basis of an apparent agency. Given that evidence, the district court erred in finding Sun Surety created an apparent agency in Blomander or Big I Bail Bonding with respect to Ventura's appearance bond and his pretrial release from custody.

That's the end of the matter. The evidence presented at the hearing simply did not support the district court's legal conclusions of actual and apparent agency.

In wrapping up, we mention two blank spots in the evidence. First, the record is a cipher as to what became of the Qualifying Power of Attorney that went to the chief judge, along with the materials from Blomander. We don't know whether it sat in some file in the chief judge's office or whether it was publicly available if someone knew to ask the right person. Nothing suggests it was provided to officers at the detention center. We have drawn neither inferences nor conclusions from this evidentiary gap in arriving at our decision.

Second, neither the State nor Sun Surety offered any bail bonds Blomander and Big I Bail Bonding wrote after they entered into their surety relationship. So we don't know whether Blomander routinely attached individual powers of attorney to those bonds or commonly ignored that requirement of the agency relationship. (She testified at the hearing that she used them.) Again, that omission has not influenced our determination. As we have already indicated, the files the State did introduce predated the business relationship Sun Surety established with Blomander and Big I Bail Bonding, and they carry little or no persuasive weight for that reason.

In sum, the district court erred in finding Sun Surety liable on the Ventura bond. We reverse that ruling and remand to the district court with directions to file an amended or supplemental journal entry finding no liability on Sun Surety's part. We, of course, offer no opinion on the liability of any other entities or individuals.

Reversed and remanded with directions.